UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VERNA AUSTIN,<br>        Plaintiff,<br><br>-v-<br><br>LAWRENCE L. SIMMONS,<br>        Defendant. | No. 1:13-cv-443<br><br>HONORABLE PAUL L. MALONEY |

**ORDER OF REMAND**

In April 2013, Defendant Lawrence Simmons removed this action from the 9th Judicial Circuit Court, Kalamazoo County, Michigan. Upon review of the notice of removal, this Court issued an order for Simmons to show cause why the action should not be remanded for lack of jurisdiction. (ECF No. 18.) Simmons filed his response. (ECF No. 19.) For the reasons provided below, the Court finds a lack of federal subject-matter jurisdiction and remands the action.

**I.**

Verna Austin initiated this paternity action on April 19, 1990, more than twenty-three years ago. Austin filed the complaint using a form pre-approved by the Michigan State Court Administrative Office. In the complaint, Austin alleged she and Simmons conceived a child in February 1997, and she gave birth in November 1997. Austin requested the court determine paternity, custody, and enter an order for support. At the time, Simmons was living in St. Louis, Missouri. He was served with the summons and complaint by certified mail on April 30, 1990. Because Simmons failed to respond to the complaint, a default judgment was ultimately entered against him. The court issued an Order of Filiation on August 13, 1990. The court declared Simmons had a duty to provide support for the child until the child turned eighteen years of age, or until further order of the court.

In either 2011 or 2012, Simmons, who was in arrears for his child support, challenged the Order of Filiation in the state court. (ECF No. 19-2 Trans. Hrg March 26, 2012 PgID 113-120.) Simmons argued that, in 1990, the court lacked jurisdiction because the state failed to perform a DNA test to determine paternity within 90 days of the filing of the complaint. Simmons argued that such a test is required in the Code of Federal Regulations. Simmons has not filed with this Court the outcome of his motion in state court.

## II.

"As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). "Unlike state trial courts, [federal courts] do not have general jurisdiction to review questions of federal and state law, but only the authority to decide cases that the Constitution and Congress have empowered them to resolve." *Ohio ex. rel. Skaggs v. Brunner*, 549 F.3d 486, 474 (6th Cir. 2008). Federal courts have an obligation to examine whether they have subject-matter jurisdiction over an action. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."). When an action is removed from state court, a federal court must consider whether it has subject-matter jurisdiction. *See Probus v. Charter Commc'ns, LLC*, 234 F.App'x 404, 406 (6th Cir. 2007) ("Therefore, despite Probus's failure to move to remand, the district court should have *sua sponte* addressed the issue of subject matter jurisdiction." (citing *Curry v. United States Bulk Transp., Inc.*, 462 F.3d 536, 539-41 (6th Cir. 2006))). If a district court determines, at any time before the entry of final judgment, that it lacks subject-matter jurisdiction over a removed action, the action must be remanded. 28 U.S.C. § 1447(c); *see Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)

("No court can ignore the defect [in it's jurisdiction]; rather a court, noticing the defect, must raise the matter on its own").

The party removing an action to federal court has the burden of establishing that the district court has jurisdiction. *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000); *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989) (holding defendant has the burden of establishing that removal was proper). Removal statutes are narrowly construed because federal courts are courts of limited jurisdiction and because removal of a case raises significant federalism concerns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Palkow v CSX Transp., Inc.*, 431 F.3d 543, 555 (6th Cir. 2005). The Sixth Circuit Court of Appeals follows a policy that "all doubts as to the propriety of removal are resolved in favor of remand." *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 704 (6th Cir. 2005) (quoting *Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999)).

Removal of civil actions is authorized by 28 U.S.C. § 1441, and 28 U.S.C. § 1446 contains several procedural requirements for removal. Generally, a defendant may remove a civil lawsuit if the federal court would have original jurisdiction over the lawsuit. 28 U.S.C. § 1441(a). At the time the lawsuit was served, Simmons and Austin resided in different states. However, the complaint did not request the required amount in controversy, defeating federal diversity jurisdiction. Even if there was diversity jurisdiction, the United States Supreme Court has long affirmed a domestic-relations exception to federal jurisdiction in diversity actions. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("We conclude, therefore, that the domestic relations exception, as articulated in *Barber*, divests the federal courts of power to issue divorce, alimony, and child custody decrees.").

For this Court to have original jurisdiction, the complaint must raise a claim under federal

3

law. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1441(c)(1)(A). Nothing in the complaint suggests that Austin's paternity claim arises under federal law. *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (holding that a defendant may remove an action only when the complaint establishes that the case arises under federal law). More than one hundred years ago, the United States Supreme Court held "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890).

Simmons contends that this Court has federal question subject-matter jurisdiction because Austin's paternity claim necessarily implicates Title IV-D of the Social Security Act, 42 U.S.C. §§ 651, *et seq.* Simmons insists that Austin could have filed her paternity action in federal court.

Simmons is incorrect. Initially, federal courts do not have subject-matter jurisdiction over paternity suits. *See Lommen v. McIntyre*, 125 F.App'x 655, 658 (6th Cir. 2005) ("In any event, Lommen is essentially seeking a federal declaration that he is Joshua's father, and matters of paternity are for the state courts.") (citing *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981) ("Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in federal court.")); *Harrison v. Henry*, 432 F.App'x 304, 304-05 (5th Cir. 2011) (per curiam) (dismissing, for lack of jurisdiction, a complaint filed by the mother seeking a paternity adjudication, the establishment of child support, and custody rights). Additionally, Simmons' reliance on Title IV-D to establish subject-matter jurisdiction fails. Title IV-D establishes requirements for child support and paternity determinations that states must meet in order to have access to certain federal funds. *See Blessing v. Freestone*, 520 U.S. 329, 333-34 (1997). Title IV-D does not, however, give individuals a federal right to force

state agencies to comply with the requirements. *Id.* at 333. The provisions do not give rise to any federal right that an individual may sue to enforce.

> But the requirement that a State operate its child support program in "substantial compliance" with Title IV-D was not intended to benefit individual children and custodial parents, and therefore it does not constitute a federal right. Far from creating an *individual* entitlement to services, the standard is simply a yardstick for the Secretary to measure the *systemwide* performance of a State's Title IV-D program.

*Id.* at 343 (italics in original).

Despite the broad language, the Supreme Court left open the possibility that Title IV-D might contain provisions giving rise to some individually enforceable rights. *See Blessing*, 520 U.S. at 345, 346. The statutory and regulatory provisions cited by Simmons, however, do not give rise to an individual right.[1] In a footnote, Simmons first points to 42 U.S.C. § 666(a)(5)(A) and (B). Section 666(a)(5) generally requires states to establish procedures for establishing paternity. Subsection (a)(5)(B) authorizes procedures for genetic testing in contested cases. Simmons also points to 45 C.F.R. § 303.5, the regulation for establishing paternity. Section 303.5(d)(1) requires the IV-D agency to require parties to submit to genetic tests "[u]pon the request of any party in a contested paternity case[.] 45 C.F.R. § 303.5(d)(1). The next subsection defines "contested paternity case" as "an action in which the issue of paternity may be raised under State law and one party denies paternity." *Id.* § 303.5(d)(2). Because Simmons failed to respond to the summons and complaint, he did not deny paternity and the underlying lawsuit never became a "contested paternity action," as defined by the regulation.

---

[1]As was already explained, for the action to be removable, the right would have to be conferred on Austin, not Simmons, as Austin filed the complaint. Simmons' attempts to demonstrate that he might have an individual right under some federal statute or regulation are, therefore, irrelevant to whether Austin could have filed the complaint in federal court.

Simmons' attempt to remove the action fails for two other reasons. First, assuming, for the sake of argument only, that this Court has subject-matter jurisdiction, Simmons failed to *timely* remove the action. Under 28 U.S.C. § 1446(b)(1), a defendant must file notice of removal of a civil action or proceeding within 30 days after receipt of the initial pleading. Simmons received notice of this lawsuit and notice of the Order of Filiation more than twenty years before he filed his notice of removal. Because Simmons did not timely remove the action from state court, he waived his statutory right to remove the action to federal court. *See Cantrell v. Great Republic Inc. Co.*, 873 F.2d 1249, 1256 (9th Cir. 1989); *McHugh v. Physicians Health Plan of Greater St. Louis, Inc.*, 953 F.Supp. 296, (E.D. Mo. 1997) ("A defendant who fails to remove within the thirty-day period waives the right to remove at a later time.") (citation omitted). Second, because the state court issued a judgment in the action, the *Rooker-Feldman* doctrine divests this Court of jurisdiction and prevents this Court from conducting an appellate review. *See Edem v. Spitzer*, 204 F.App'x 95, 97 (2d Cir. 2006) (affirming the dismissal of a state-court defendant's attempt to remove a paternity proceeding from state court after the state court issued a final judgment).

## CONCLUSION

Simmons has not established that this Court has subject-matter jurisdiction over the more than twenty-year old paternity action he seeks to remove. Therefore, this action is **REMANDED** to the 9th Judicial Circuit Court, Kalamazoo County, Michigan. **IT IS SO ORDERED.**


Date:  June 19, 2013                              /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  Chief United States District Judge